All right, we are prepared to proceed in Parker v. Martin. Mr. Brandt? Yes. Mr. Thompson? May it please the Court, I'm Lori Thompson here on behalf of Dan Martin, who is the principal creditor in Deborah Parker's Chapter 7 bankruptcy case. The bankruptcy code is intended to provide a fresh start to the honest but unfortunate debtor, but that is not Ms. Parker. The bankruptcy code is not intended to act as a shield to protect someone from fraudulent behavior, but that is unfortunately how Ms. Parker has used the bankruptcy process. She admitted that she filed bankruptcy for one and only reason, and that was to avoid paying Mr. Martin money that she freely admits she had the ability to repay him that she had taken from her father's assets that he was entitled to receive. She acknowledged that during all of the relevant time period she had the ability to pay, but brazenly said, I didn't want to. And as a result of that, she initiated a bankruptcy proceeding in Chapter 7 and has attempted to hide behind the skirts of the bankruptcy code. The bankruptcy court correctly held that this debt should be accepted from the discharge under 523A.4, which was the embezzlement standard. Now this court is looking to determine whether or not the bankruptcy court ruled correctly, but in my argument today, what I'd like to do is address the two bases on which the U.S. District Court did that on two grounds. First being that the bankruptcy court that heard the testimony of the witnesses committed clear error in finding that she acted with fraudulent intent. The second base is being— At what moment did—at what moment or what point, I guess, from the bankruptcy standpoint, were you alleging that Parker embezzled money? Because you got two different things going on here. You have the death of the father, and then you have the judgment. Are you saying that the embezzlement occurred after the judgment, or did the embezzlement occur after the death of the father? So her wrongful conduct in taking money that did not belong to her, that she came into possession of, occurred when her father passed away in 2013. She came into possession of assets with full knowledge of the agreement and the will of her father, Morton, and his lifelong companion, Peggy, who was the mother of my client. That—those actions continued. So at any point in the spectrum of time, Ms. Parker could have corrected her actions, and we wouldn't be here today. But doesn't she—I think her argument is that she was acting in good faith, that she spoke to the bank, and the banks told her that the money was owned because it was a joint account between her and her father. Correct. And that she—I think the banks pretty much told her she had the right to use the money. And so that's why I'm asking the question about when is it that we look at the embezzlement. Is that the money she spent after the father died, or is that the money that was spent after the judgment? So I believe that the point in time that you are looking at whether or not this claim arose from embezzlement is when the claim arrives in the bankruptcy court. Because you're assessing that claim that is filed in the court and whether or not it gives rise to an exception to discharge. So all of that conduct leading up to it is relevant and is evidence of her intent and whether or not that claim gave rise to it. Certainly, at the time that the court enters the state court judgment, one would think that she can no longer say, well, I believed I was entitled to this money. Her testimony is, well, I always thought I was entitled to the money. But the judgment wasn't based on fraud. It was based on—they found that it was owed to your client. That's different. Well— Isn't the race the thing—I'm back to Latin again—isn't it the thing is just a judgment debt, isn't it? That's the claim—your client's claim is a judgment debt, correct? Am I right or wrong? You are. You are accurate. All right. So then the question becomes then whether that's dischargeable is what—because people discharge judgment debts all the time. Correct. Right? So the question then becomes how do we know—because you have to hang all of your things on the finding for the bankruptcy in terms of it relates solely to embezzlement, not a fraudulent conveyance. So you don't get the full range of dischargeability. Yours is solely embezzlement. And going to Judge Benjamin's question, the question of what point in time is important because her father says, okay, listen, I'm turning stuff over to you. You do this, joint accounts and all those things. You have to show that she received it for a purpose that was different than what she was told to use it for. What is that? A base that's in the judgment. Well, how do we know that judgment? Because I've looked at the judgment from the state court. Didn't find it on fraud at all. Just say you owe the money. But people do. Yep, I bought a house. I couldn't pay for it. I owe the money. You've got a judgment against me. That doesn't mean it's not dischargeable. So where do you have— Right. Where do you have that judgment that race was based on embezzlement? So in assessing whether or not a claim is accepted from discharge, the law is that the bankruptcy court needs to look to the character of the claim. So Mr. Martin and Ms. Parker were not in a creditor relationship prior to her taking money that was directly to be given to him. Under the agreement and under the will, it was very clear, two-thirds of Mr. Poindexter's—I'm sorry, yeah, Morton Poindexter's assets were to go to Dan Martin. His estate. His estate, but also more than that, Your Honor, and that's an important distinction that the district court did not address when it looked at just what the will said. So it was more than just the estate. That was determined under the will. But under the agreement, there were two provisions that were critically important. One is that there was a restriction on any lifetime transfers of more than $1,500 on an annual basis. And it said you could not do that to the children because you were to preserve all of the assets. Because remember, Morton has now received all of Peggy's assets, which were Mr. Martin's mother. And so he has to preserve those because he's the surviving spouse. So who breached that contract? I'm sorry? Who breached that contract? So Morton breached that contract when he added her to the accounts. At the point that he added her to the accounts, he made transfers exceeding $1,500. And when Ms. Parker— But that's not embezzlement. —receives a copy of the agreement— That's not embezzlement. That's not embezzlement. For example, hypothetically, that could be co-conspirators. It's not embezzlement. Otherwise, if you agree to give me something that you weren't supposed to give me, I'm not embezzling. I may be a co-conspirator, but I'm not an embezzler. And that's where the fraudulent intent comes in. So the elements of embezzlement are— Do you think there's a difference between embezzlement and fraudulent intent, or do the two overlap? So fraudulent intent is an element of the embezzlement claims. Yeah, just an element. Fraudulent intent is to show that you came into possession of property lawfully. So that's how she got it. She got it by the change of the name on the accounts. But that you then exercise control and dominion over that property, and you are not lawfully entitled to it. And she is not lawfully entitled to it under the agreement and under the will, which the state court judgment said those are enforceable documents, and she is not entitled to those  The bank told her that she was lawfully entitled to it. Just like if I have a joint account with my husband, I feel like I'm lawfully entitled to that, right? Correct. That's why she became in lawful possession of it, but she didn't get to keep it. That's the thing. When she came into possession of that, what the bank was saying—and again, she goes in, she talks to a bank teller, and the bank teller said, your name is on the account. When he passed away, you became the owner of it. So when she became the full owner of it, at his passing in 2013, she knows that there is an agreement, that she is not entitled to receive it, and she knows that there is a will that says exactly how his assets are to be administered. It's the combination of the agreement and the will that locked up all of their assets and provided that they would all be administered in accordance with an agreed plan. Because we have to remember, Peggy is deceased at this point. She trusted that Morton would follow through with the plan, and Deborah Parker is trying to get a windfall with full knowledge of what's going on, and the element of intent that the U.S. District Court reversed the Bankruptcy Court—keep in mind, the Bankruptcy Court, we had a trial. We had evidence put on. He heard Ms. Parker testify. So Parker knows about Morton's will, and he knows about the agreement to Peggy, and he knows about the executive's directions, and you're saying that Parker has actual awareness and knowledge that the money is not hers. That's what the Bankruptcy Court found. Based on her testimony, it determined that she had full knowledge when she read those documents. And if you look at them, they're not difficult documents. What the U.S. District Court said is— But you would agree that the Bankruptcy Court ignored—I think the Bankruptcy Court said there was nothing that gave her—said that she was entitled to those funds. The Bankruptcy Court completely ignored anything about the bank telling her that those funds belonged to her. Because that's her good faith argument, is that the bank told me that these funds belonged to me because this is a joint account. My father has died, and so now I am the sole survivor on the account. The problem I see with the Bankruptcy Court's order is the bankruptcy doesn't say, I'm sorry, Ms. Parker, that's not credible. There's no credibility finding. There's no finding of bad faith. There's no evidence. There's no cross-examination by your client, and it's not—none of that is explored by the Bankruptcy Court. And so I think that's the issue that the District Court had when the case came to the District Court. So the finding that her credibility was not—was ruled to be in question by the Bankruptcy Court and that it didn't buy it when she said, well, I thought I was entitled to this money, when she testifies that she always thought she was entitled to this money. She would tell you today she thinks—it doesn't matter that a state court judge ruled against her. She will say that, but the judge—I'm sorry. Yeah, I guess the problem is you're talking about embezzlement and fraudulent intent. And so we've got to be able to see where this fraudulent intent—and in showing intent, he's got to either say what the Bankruptcy Court said was that, well, there's no evidence that she thought that the money belonged to her. Or, well, there is evidence because it was what the District Court said because she went to the bank and the bank told her the money belonged to her. But so then at that point, you would think the Bankruptcy Court would say, but we don't find that to be credible because she knew, bam, bam, bam, bam. But the Bankruptcy Court doesn't do that. It did not state explicitly. That's absolutely correct. It did not say explicitly that she's not credible. But consider the evidence that the Bankruptcy Court heard of her behavior. We know that after, in 2014, she gets sued in state court.  So she's been sued because she's not entitled to that money. What does Parker do? She goes on a spending spree. She does cruises. She buys a timeshare. She buys a diamond ring. We put on evidence of all of her expenses. Then we fast forward to 2019. In August, the state court says those agreements are enforceable. You are not entitled to that money. That's in August of 2019. In September, it issued the order that said so. What does Parker do? She clearly has the money to pay. She can do it at any point. Does she repay the money? No. She says, I didn't want to pay him. So what does she do? She stalls. We have the emails from her attorney that says that he noted an appeal with no intent to prosecute, just a stall. That was Exhibit 18. We have emails between her state court attorney and her bankruptcy attorney, Exhibit 17, stating the goal is to push everything out as long as possible so that Debbie can proceed with filing a Chapter 7. And then she takes all of the cash out of her bank account. She moves $245,000 to pay off tenants by the entirety's property. And then she files a bankruptcy case with debts that only include Mr. Martin's debt. There are two very small debts, but really she had no debt. She ran up a credit card debt within three weeks before to the tune of about $4,800. She listed her father's burial expenses, which are not her debt. They belong to the estate. And she listed her HOA. This is all a fraudulent scheme. Everything you said sounds in fraudulent conveyance, not embezzlement. These things are important. I mean, I did some bankruptcy litigation in my practice. I know a little bit about it. But they're very important. It's not just because fraud is generally, yes, fraud is an element in a whole lot of crimes, but it doesn't make it embezzlement. It's just one of the elements. What you said may very well be evidence of animus. I don't want to have a dime of it, so I'm going to spend my money, which I believe is mine, and I'm going to make sure it is mine. That could be just animus. I don't like him. I'm just hypothetically, I don't know, I've never met the people. Admittedly, this is not the traditional definition of embezzlement that we tend to think of. But if you look at each component of it, we are met. She came into lawful possession of the money. She was not entitled to that money because it belonged to others. And she took it with knowledge that she wasn't entitled to it. Wait, it belonged to other people when she got it? No. He was living when she got it, wasn't he? Yes, Your Honor. He was living. So they weren't entitled to it. Your client wasn't entitled. For example, could he not have spent every dime of his money living while he was living? Subject to the provisions of the agreement for his use and maintenance, the agreement specified how much of the money they could spend while he was living. But yes, what he could not do was convey more than $1,500 to any of his children. That was specifically prohibited. And she received all these assets at his death in 2013 with full knowledge of the agreement and the will at that time. Yeah, but these instruments say that it was hers upon his death. He was not seized of it at his death. I mean, that's what's pay on death. POD means exactly what it means. It's the person who died is not seized of it at the point they died. So it's not a part of their estate. So that's part of the property of another. The property of another is the equitable title to those assets. Who do they belong? Just like in the case of In re McNew, where the person works for the company. They are lawfully entitled to manage all the money. They're on the accounts. But they're not entitled to keep that money, because it doesn't belong to them. It belongs to the company. So yes, she did have lawful possession. And that is one of the elements of embezzlement, is that you came into possession lawfully. But she didn't have true ownership entitlement to that, because of the equitable claims of how it was owed. The difference is this. She was in lawful possession. Your problem is, this is the arc, but you can get it, that you use it for a reason that was not intended. He intended, when he signed the documents, for POD. See, that's the problem. When he signed that that said POD, that was his intent. Embezzlement requires you to get it lawfully. That's the first element. And then to use it in a way that's contrary to the basis for which you received it. Nothing is contrary when you sign the bank documents that says POD. It says pay on debt. He signed it. So that's the arc you're missing. Then you skip over to the third one. Well, it really belonged to my client, eventually, perhaps. But the problem with embezzlement is, he signed it off. And POD means exactly what it says. And that's not contrary for you to keep the funds that you received at the debt, legally. Right? Am I wrong? Maybe I'm wrong. Tell me I'm wrong. Legally, though. My time is right. Your time is? Time is up. Well, go ahead. I think the chief might let me. No, go ahead. Go ahead. OK. Yes, she lawfully came into possession of the money as a result of the POD. But she was not entitled, under the law, to keep that money. It had to be paid to Mr. Martin, because it was given to her in violation of the agreement and in violation of the will. And the state court ruled that he was. So that's a breach of contract. That's a breach of contract. That's not embezzlement. That's a breach of contract. Thank you. Thank you. All right, let's hear it for your side of the room. Mr. Brandt. Your Honors, good morning. Robert Brandt for the debtor, Ms. Parker. My wife texted me, don't make a fool of yourself before I walked into the courtroom. Hopefully, I could be successful at doing that. It's my first time. I'm a little bit nervous. Here's what the case is about. Dad made a promise to his, quote unquote, wife that he would abide by an agreement. The father fails to abide by the agreement and gives away most of his estate. The daughter, the debtor who filed for bankruptcy, receives the estate. And the other party wants to punish the recipient, the debtor who filed for bankruptcy, for her father's willful breach of a contract that he entered into with the debtor's stepmom. That's big picture what we have here. Second big picture, which I argued in my pleading and regretfully did not cross appeal on, one of the reasons that the plaintiff were unable to prove embezzlement at trial, and I hope the point got across, is because they did not walk into the courtroom intending to argue embezzlement. It's pretty hard to prove a cause of action when you walk into the courtroom and you draft the pleading with no intent of proving that cause of action. And through serendipity, the bankruptcy judge hands you a cause of action at the bottom of the ninth inning as the case is wrapping up. So it was the bankruptcy judge who pointed it out to the plaintiff, hey, by the way, how about embezzlement? What do you think of that? And then the plaintiff scrambles and tries to make an argument. And again, the importance of that is because of the state of mind, because it was clear that they were in there to argue conversion. And the pleading said, conversion, conversion, conversion. And out of that, we're going to argue fraud. We're going to argue this and that as far as exceptions to discharge. They did not question the sincerity and the testimony, the truthfulness, the credibility of the debtor who filed for bankruptcy. Well, let me ask you this. So I asked her this question. At what moment in this whole process is she asserting that there was embezzlement? Is that when the father dies, or is it after the judgment? I'm not sure. I think she's pretty much saying it's both. But tell me why, after your client has this judgment from the state court saying that you owed a certain amount of money, why is it not fraudulent intent when she goes and spends the money or does whatever she does before she files a bankruptcy? I would say the deed is done. So the critical time for the embezzlement to be proven was after the death of the father, in the weeks following the death of the father, because you have to show the state in embezzlement. It's about the state of mind. But you would agree she disposed of some of the funds after the judgment from the state court. The judgment being, I think, some five years later, if not more. The lawsuit was filed some six months after the death of the father. And the lawsuit languished in state court, it's right there in the transcript, for about a good five years before a ruling was finally rendered. So all kinds of events transpired during those five years. In fact, the bankruptcy judge says something to the effect of tracing. If you read Judge Kenney's opinion from the bankruptcy court, he says, I'm paraphrasing, we don't need to bother with tracing at this point. The focus being the debtor's state of mind when she received the funds a couple of weeks after the death. That, to me, is the critical timeline. And if I could just step back for a moment, because I'm constantly thinking of examples. So big picture, embezzlement, sometimes it's a slam dunk. The quintessential example, the bookkeeper, she's greedy, she hates her boss, I'm underpaid, she grabs $50,000, or she's doing it for years. There's no defense to that. And it's a slam dunk. We don't need the bookkeeper to make a confession. The state of mind was obvious, and there's no one in the room that's going to believe that the boss gave you an extra $50,000 and you misunderstood. But life is about the gray zone, and cases that end up in court almost always involve grays. So I'm thinking in my head of all the situations where you take an engaged couple, and there's an engagement ring of $30,000, and six months later. Let's suppose that somebody just phrased the case in this simple terms, that Parker had knowledge of Morton's will, his agreement with Peggy, et cetera, et cetera. The money that she took for a series of very lavish expenses and personal expenses she knew was not hers. That accordingly, she acted with fraudulent intent in taking money she knew belonged by virtue of the wills and the agreement. She knew it belonged to someone else. She took it for herself over and over and over again. And that kind of misconduct, why should the state court judgment then be dischargeable? Suppose someone framed it just that starkly. In other words, the fact that you are lavishly spending the money that you received not that long ago goes to the presumption that you know the money doesn't really belong to you. So I would say that the fact that I'm lavishly spending does not equate to, I know in my heart of hearts that money doesn't belong to me, which is what you need to prove an embezzlement. And any explanation of the company. Did the bankruptcy court's finding cover that? I know that this money does not belong to me. I'm sorry, Your Honor. Please repeat. Did the bankruptcy court's fraudulent intent finding cover the point that you and I just discussed, which was that she knew the money did not belong to her? No, Your Honor. The way I recall the opinion is the bankruptcy judge simply stated, you read the will, you speak English, you know what the will said, ergo embezzlement. That's it. In fact, made a point thereafter to state, if I recall correctly, I'm not even concerned with the whole business of how she spent the money. I'm not even taking that in. What did the bankruptcy court's finding of fraudulent intent, what did it mean? Was it just an empty finding, or what were the implications of it? With the utmost respect to Judge Kenney in the bankruptcy court, yes, it's literally one sentence. It's, you read the will, and I'm paraphrasing, that is the epitome of embezzlement, period. By implication, you read it. You should have known what it said. It clearly states what it states. By implication, you didn't like what it states. You pocketed the money. That's embezzlement. And respectfully, he oversimplified embezzlement. He turned it into a per se rule. He turned it to a strict liability statute. How was it oversimplified? How would you have written? What would you have said that the bankruptcy court did not turn? That, again respectfully, simple finding applies to conversion. The Corvette is not yours. I've proven that the Corvette belongs to me. Is it in your possession? Yes, it is. But, but, let me explain. There is no but, but, let me explain. This is conversion, the tort of conversion, period. The end, I win. That's not embezzlement. Embezzlement, you have to go up two wrongs on the ladder. And I've seen courts use the term felonious intent. So it's a whole different ballgame. Your state of mind, your intent, greatly matters. As a, by the way, plenty of case law says someone who makes no concealment of their actions, i.e. spending lavishly, is someone, the presumption is, who believes that what they're doing is correct. The bookkeeper who steals, the bartender who steals, hides their embezzlement, keeps it in the dark. The person who believes they're innocent and they did nothing wrong goes about their business and spends their money and says, hey, I've checked with the authorities. The authorities have assured me again and again that I have a right to keep the money. Would there be, would there have been other statutory sections in Chapter 11 other than embezzlement that would have applied to render the funds non-dischargeable? Let's say your view is that embezzlement doesn't work. Were there other causes of action under the code that could have been brought, they weren't? They were brought. The plaintiff argued fraud and defecation and I believe, I'm sorry, I'm, I'm. None of them prevailed. Right. Right. And none of them prevailed. And then the judge. I'm sorry. I didn't hear your last word. I was fumbling with the third cause of action that I can't recall at the moment, but yeah. Let's say you were representing those that wanted the judgment non-dischargeable. What do you say would have, I understand that your point with respect to embezzlement, but what cause of action could they, do you think would have been more successful? Be careful of malpractice. I, I, I'll be honest. I've had tunnel vision the last 72 hours over embezzlement that, that, that, that might. I'm just interested because in the general proposition that someone can behave this way and, and, and, and, and have it dischargeable. But if, okay, I'll answer it this way. I know we're all into embezzlement, but just. It, it, it, it doesn't seem right that this should be the legal result. I, I, I, I fall back to Congress and, and, and, and unfortunately, yes, there are instances where it doesn't seem right and the court doesn't, doesn't feel right about issuing the decision that it should based on the law, because to put it very simply, it doesn't seem fair, but respectfully that, that, that's, that's not the rules of the road. And quite frankly, that's precisely what happened in this case. If you read the transcript, it is clear that the bankruptcy judge knew at the conclusion of the trial that none of those causes of action would work. So he inserted himself and said, want to try this one, embezzlement? I just want to make sure I'm, I'm, I'm saying these two critical phrases. An erroneous belief of entitlement, in plain English, if you have reasonable justification to believe that your actions make sense, it's not embezzlement. I am the remaining heir of my father. I'm spending more time with him in the last few years. He never informs me. This would be a game changer. Listen, honey, I love you, but I'm giving most of my inheritance to your stepbrother, right? None of that evidence, none of that takes place. Father passes away. The daughter, like any normal daughter, expects that the bulk of the inheritance is going to go to her. And then she receives a shock. And she testifies that she's confused by what she read. So you're saying that the bankruptcy court relied upon embezzlement because he knew that nothing else would do it?  Yes, he, he, he, yes, the judge wanted to do the right thing. So he, he spoon fed the plaintiff the cause of action of embezzlement, yes. Let me ask you about the district courts. The other, beyond the embezzlement, the district court says that, basically says that the contract is invalid, makes these other rulings, that the amount is not correct. Would there be error on the part, under race judicata, would there be error under the, for the district court, the district court's findings there regarding the contract, things that would already be cited on the state court when it came, when the judgment came about? I think that the district court judge, Judge Ellis, who I believe is now retired, did a surgical strike and a surgical analysis, line by line, of the opinion of the bankruptcy court. I think he's a lot more intelligent than I am, and he explained in great detail what constitutes property of another, and explains the presumption that even the bankruptcy court made, that everything was the property of another. And Judge Ellis says, well, let's look at this more carefully. It's not quite that simple. And as I'm getting slightly confused in my mind, it's something else occurs to me. Even now, you could see various counsel arguing over what precisely the document meant, didn't mean. But I guess at the point where it gets to the district court, there's already a state court judgment. So the district court goes in and says, oh, this post-marital agreement is not a valid contract. And then the district court says that there's a question about the, I want to say maybe the amount, or about the judgment. Wouldn't rules of race judicata bar the district court from doing that? Yes. I think the point that Judge Ellis made is that the cause of action in the state court was simply breach of contract and unjust enrichment. That's here. But then over here in bankruptcy court where you're arguing embezzlement, the angle is different, and you have to prove a different cause of action, embezzlement. The assumption is, almost always, it goes without saying, that you took all of my property. You took my car, you took my money, you took my house, and you have no justification for doing so. And he simply said, slow down, guys. You're assuming that the five different sources of inheritance that the debtor received, all of which was property of another, the plaintiff, when in fact it's not quite that simple. And he goes on to explain item by item what is property of another and what is not. I know, but it seems as if maybe the district court went a little too far, because there's already a judgment from the state court, right? Yes, the judgment for breach of contract. Under full faith and credit and all of that. So it seems like the district court may have gone a little far in determining that the contract wasn't valid, questions regarding the judgment. But let me ask you this. So let's assume, if we say that there was some error by the district court, I'm assuming that you're going to say that the district court did not err, that there's no issue with that error, because there's no fraudulent intent. Yes, please. What you just said, yes. And the error would be harmless to that extent. Yes. Put it differently, it's an academic exercise. If there was no fraudulent intent, whether it's $100,000, $150,000, $200,000, there was no fraudulent intent. Therefore, you can't find embezzlement. And I think my time is just about up. Thank you for listening. The elements of embezzlement, I'd like to circle back to those, because with due respect to counsel, we did argue embezzlement. It was presented to the bankruptcy court at the hearing, because embezzlement is the flip side of larceny. So in larceny, you come into possession of property. What they're arguing is that, before the bankruptcy court, that embezzlement was sort of a Hail Mary, and that he sort of looked in the cupboard and nothing else worked, and said, hey, what about this? Let's try embezzlement, because none of the others fit. What do you say about that? So I mean, it's not classic embezzlement, which is an inside job that somebody tries to hide. And there's a great deal of secrecy that surrounds embezzlement. You don't want anybody else to know, and you're taking money that is not yours from inside. And this isn't classic embezzlement. Correct. All right, so what do we do with that? Because is it just sort of a Hail Mary, because nothing else would work to render the debt non-dischargeable? I pled in the alternative, and I argued in the alternative. Under 523A2, 4, and 6, that's what we do in every case where there is an issue about whether or not a debt should be accepted from discharge, where there is fraud, where there is a claim that arose as a result of someone taking something that didn't belong to them. That gets to my point, and that is that there would seemingly be in the bankruptcy code all kinds of provisions that would have posed obstacles to the discharge of the debt. And there were just a number of theories that could have been pled and could have been provided to render the debt non-dischargeable. And I don't understand why none of those were why you availed yourself of none of those and went after and hung your hat on embezzlement, which strikes me as we're trying to push a round peg in a square hole. Each of the elements of an embezzlement claim is shown on the facts of this case. Let me ask you this. But you didn't plead embezzlement. We pled the statutory that it was accepted from discharge under 523A4, which provides that it is accepted from discharge for a debt for fraud or defalcation or acting in a fiduciary capacity, embezzlement or larceny. That was what we pled under. But if you look at the transcript, you all don't argue embezzlement until your closing argument after the bankruptcy court brings up embezzlement. You do discuss it in your closing argument, because then I think they come back and start saying, oh, we didn't know embezzlement was a part of the issue here. So you do discuss it in a closing argument, but that's after the bankruptcy court sui sponte says embezzlement. Well, as the testimony came in, that was what the facts gelled around as fitting to a T. But even on cross-examination, there's no question regarding bad faith. There's no question regarding fraudulent intent. It's really more to the conversion and the breach of contract. It's nothing about anything. I would respectfully disagree. I believe that the entirety of the testimony was to show the intent of her. She admitted brazenly that she did not want to pay. Fraudulent intent and embezzlement. You've got to show fraudulent, not intent, just intent, to convert the money. You've got to show fraudulent intent. Correct. But there's no cross-examination. There's no discussion about this fraudulent intent that leads to embezzlement until the bankruptcy court says sui sponte, something about embezzlement, and then you all discuss it in closing argument. No, it was always intended to go into closing argument. But as far as cross-examination, I mean, short of saying you didn't really believe it when the bank teller told you that, I'm not sure how you cross-examine that. She says, I thought that I was entitled to the money. The bank teller told me that it was mine. But we got her to admit. She read the agreement. She read the will. She presented no argument that she didn't understand what those documents were. And we were able to show that she thereafter engaged in, I'm sorry, Your Honor, I just noticed my time is up. May I answer? The things that you're saying, you have a strong equitable case because of the degree of her awareness. It wasn't her, but it just, what's difficult about the case is that I'm not sure that it was pled correctly or that it was argued correctly. It seems to me there's so many different provisions of the bankruptcy code that would have allowed you to take advantage of a very strong equitable argument to render the debt non-dischargeable. And I just don't understand how it all came to rest on this point of embezzlement. Well, Your Honor, we pled and argued under A2, A4, and A6 that all were applicable in this case. That's what our original pleading was. That was what our argument was. Thank you, Your Honor. All right, we thank you. We will come down and shake hands and then we'll move into our final case.
judges: J. Harvie Wilkinson III, Roger L. Gregory, DeAndrea Gist Benjamin